UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 8, 2006
Decided June 28, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-4455

| | |
|---|---|
| OSCAR B. SHIRANI, | Petition for Review of an |
| *Petitioner*, | Order of the Department |
| v. | of Labor |
| | |
| UNITED STATES DEPARTMENT OF | No. 03-ARB-100 |
| LABOR, | |
| *Respondent*, | |
| and | |
| | |
| EXELON CORPORATION, | |
| *Intervening Respondent*. | |

**O R D E R**

Oscar Shirani began his career as an engineer with Commonwealth Edison, an Illinois electric utility, in 1990. In 1994, he moved into ComEd's quality assurance department, where his job involved performing audits on companies that supplied equipment or services for ComEd's nuclear power plants. By all accounts, Shirani received good assignments and favorable performance evaluations. But two incidents led to friction with his superiors.

In 1997, Shirani led an audit of a General Electric Nuclear Energy (GENE) facility in San Jose, California. His team identified a number of safety problems,

and Shirani recommended that ComEd issue a stop-work order against GENE, which ComEd did. In an unfortunate twist of fate for Shirani, a GENE manager with whom he had tangled during the audit, David Helwig, became, a year later, a ComEd vice-president. Shirani came to believe that Helwig was blocking his career at ComEd in retaliation for Shirani's work on the GENE audit and an argument the two of them had had during the site visit.

In 2000, Shirani conducted an audit involving "dry casks" (which are used to store spent nuclear fuel) supplied by Holtec International/U.S. Tool & Die Co. At a meeting later that year sponsored by Holtec, Shirani piped up from the audience and asked company officials about their compliance with the report his team had issued. A federal Nuclear Regulatory Commission official was in the audience and asked Shirani to send him a copy of the audit report. At least one of Shirani's superiors indicated annoyance that the NRC had learned of the Holtec audit. The NRC official later asked Shirani why he had not issued a stop-work order against Holtec, and Shirani responded that he had been afraid of losing his job.

Also in 2000, ComEd's parent Unicom merged with PECO Energy Corp. to become Exelon Corp. Consequently, ComEd employees had to reapply for their jobs. Shirani was re-selected for the job he occupied as a principal auditor but was turned down for several management positions. Discouraged by his inability to advance in ComEd's nuclear section, Shirani sought a different audit position in Exelon's business services area. The new job raised his salary from $86,887 to $94,000. He accepted it with the understanding that the job was an opportunity to learn to be a nonsupervisory auditor and that the internal audit area would be undergoing organizational changes as the dust settled from the ComEd-PECO merger.

Eventually, the internal audit employees had to reapply for their jobs as well. Rather than reapply for the staff auditor job he was in, which was due to be bumped down to a lower salary grade as part of the new organizational plan, Shirani applied for a management position for which he was previously warned he might not be qualified. He understood he could not remain in his staff auditor job if he did not reapply for it. Shirani didn't get the promotion, and since he had not reapplied for his old job, he was automatically terminated.

Shirani then filed a complaint with the U.S. Department of Labor's Occupational Safety and Health Administration alleging violations of the whistleblower protection provision of the Energy Reorganization Act (ERA), 42 U.S.C. § 5851. He alleged that Exelon fired him in retaliation for his participation in protected activity--namely, the 1997 GENE audit and the 2000 Holtec audit which he discussed with the NRC official. OSHA investigated Shirani's complaint and concluded there was no connection between the protected activity and his

termination. An administrative law judge, after a 3-day hearing, also recommended that Shirani's complaint be dismissed. The Administrative Review Board (ARB) of the United States Department of Labor concurred with the ALJ's recommendation and dismissed the complaint. This appeal followed.

We review cases arising under the ERA according to standards provided by the Administrative Procedure Act. 42 U.S.C. § 5851(c)(1); Kahn v. U.S. Sec'y of Labor, 64 F.3d 271, 276 (7th Cir. 1995). Given Congress's recognition of an agency's special competence to handle such matters, a court's review must be deferential. Kahn, 64 F.3d at 276. We may overturn the Review Board's decision only if we find it is "unsupported by substantial evidence" or if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (E); Kahn, 64 F.3d at 276. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence may be less than a preponderance of the evidence, . . . and a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." Kahn, 64 F.3d at 276 (citations omitted).

Under procedures established for investigations under the ERA's whistleblower provisions, Shirani was required to establish that the officials who decided not to hire him as a manager during the internal audit reselection process knew of the protected activity in which he had engaged while he was in his nuclear job, see 29 C.F.R. § 24.5(b)(2)(ii), and that the circumstances were sufficient to raise an inference that the protected activity contributed to his termination, see 29 C.F.R. § 24.5(b)(2)(iv).

The Administrative Review Board found that the company official who offered Shirani the internal audit job in 2000, Ruth Ann Gillis, knew that Shirani had been unhappy on the nuclear side of ComEd's operations but was unaware of his clashes with superiors over the GENE and Holtec audits. Moreover, the ALJ who heard Shirani's case made a specific demeanor-based credibility finding about Gillis's testimony, finding her to be a "highly credible witness and her testimony compelling." The head of internal audit who did not select Shirani for the management job for which he applied, Ellen Caya, also testified that she knew nothing about Shirani's previous problems and that no one ever suggested to her that she should or should not select Shirani. Gillis's and Caya's testimony clearly meets the statutory standard of substantial evidence needed to support the Board's decision that Shirani's termination was not based on his protected activity.

Shirani argues that the Board's decision was arbitrary and capricious because it failed to credit evidence that others within ComEd/Exelon besides Caya had retaliatory motives against him and that their motives somehow contributed to the decision not to hire Shirani into a job for which he had previously been warned he might not be qualified. But even if our review of the record left us persuaded that the Board overlooked some evidence favorable to Shirani's case, that would not be enough to outweigh the substantial evidence on which the Board based its decision. We are not free to set aside the Board's factual conclusion simply because we "find[] the opposite conclusion more reasonable or because [we] question[] the factual basis." Kahn, 64 F.3d at 276.

Finally, Shirani claims that the Board's decision was arbitrary and capricious because it ignored ComEd's alleged refusal to grant his requests to return to the nuclear section. Shirani says the company's alleged refusal to allow him to return to the nuclear section "was not one discrete act; it took place over a period of time, in fact, on each day until he was given notice he was going to be let go." Shirani cites Place v. Abbott Labs., 215 F.3d 803, 808 (7th Cir. 2000), in support of his theory that the company's lack of interest in transferring him back to his old area was a "continuing violation," a situation "where the employer's discriminatory conduct is so covert that its discriminatory character is not immediately apparent." Id.

We cannot agree that Place supports Shirani's theory of his case. In Place we explained that "[t]he continuing violation scenario makes most sense in a sexual harassment case, where the first offensive comment or inappropriate touch may not alert the victim to the harassing quality of the conduct. A job transfer is quite different. Like being fired, demoted, or not promoted, a job transfer is a single, significant event, not a continuing act." Id. (citation omitted). Shirani has not pointed to anything in the record to indicate he ever actually applied and was turned down for a job that would have transferred him back to the nuclear section. Thus, even if we accept as true that he communicated to company officials his desire to transfer and they chose to ignore him, such evidence would be too amorphous for us to evaluate as concrete evidence of an act that discriminated against him based on his status as a whistleblower.

For these reasons, Shirani's petition for review is DENIED, and the ARB's order dismissing Shirani's complaint is AFFIRMED.